Petitioner George Edward Nastase. This is an unusual case. It involves some very sympathetic factors. The petitioner was admitted as a refugee from Romania when he was about a year and a half old, came in with his family. He has six criminal offenses that resulted in the removal proceedings. None of those offenses are violent or dangerous offenses. None of them involved weapons. None of them are categorized as aggravated felonies under the Immigration Nationality Act. The most serious offense was a state jail felony for possession of less than a gram of methamphetamine. This appeal involves two issues. The first question is whether Mr. Nastase acquired United States citizenship when his mother naturalized. He was still a child at the time. The statute governing that is Section 320A of the Immigration Nationality Act or 8 U.S.C. 1431A. Obviously, if Mr. Nastase is a citizen, then that's the end of the case. He can't be removed. But alternatively, if the court should find that he's not a citizen, then the next question is whether he should have been granted adjustment of status under Section 209 of the Immigration Nationality Act. And such adjustment of status would be contingent upon the grant of a waiver of inadmissibility under Section 209C. On the acquired citizenship issue, many years ago when I was in law school, my administrative law professor told us that everything begins with the language of the statute. Our argument in this case is entirely statutory. The Section 320A dealing with the acquired citizenship basically has four requirements. And all of those requirements are present in this case. And there's no dispute about any of them except whether he was residing in the U.S. as an immigrant. And the definition of lawful admission for permanent residence is a term that is defined in the INA in Section 101A.20. And the definition of lawful admission for permanent residence itself contains several terms such as permanent, immigrant, admitted, which are also defined in the Immigration and Nationality Act. Counsel, do you believe the Barker case that the Supreme Court heard arguments on yesterday about being admitted but inadmissible has any bearing on this case? With all due respect, Your Honor, I don't know. I haven't followed the case. I'm sure when it's issued, I'll read it. That's a fair answer. I don't know is a fair answer. Go ahead. Okay. Thank you. Tell me what does have a bearing. Okay. So all of these or several of the terms that are within the definition are themselves defined in the Act. And our argument has always been that if the requirement of lawful admission for permanent residence under Section 320A is applied giving all of those terms their congressionally defined meanings, then there is no difference between the admission as lawful permanent residence or adjustment of status under Section 245 or any of the other ways of acquiring permanent residence. It's a difference without a distinction is our position. What would be the point? I use the codified section number, so tell me if this is a confusing question. I don't use the INA section numbers. But Section 1159, which governs the adjustment of status to legal permanent residence, why would Congress have provided for specific ways to adjust to LPR status if you could effectively become LPR by just satisfying your understanding of 1431? Again, this is an unusual situation in that the respondent came in when he was one and a half years old and never went through that process. Why, I don't know. Well, I do know. The record indicates that his mother was told that when she applied for adjustment of status that he would be included. Well, that might make you eligible. Right. It might make the child eligible. Right. And my question isn't so much about the petitioner in this case. It's about the text of the INA. And I appreciate the argument that you're offering today, which is a textual statutory one. But rather than talking about the sections 1431, my question is about 1159. I understand, Your Honor. Congress has specified a way to adjust status to LPR status. As I elaborated in our reply brief, there are other purposes of Section 209. This is an unusual situation because we're looking at it through the lens of the acquired citizenship statute. But in the normal course of things, people are not going to have a claim to acquired citizenship. They're going to need some proof of their status in order to work or travel outside the United States. And in cases where they're not acquiring citizenship, you know, the Section 209 or 1159 provides a mechanism for them to go from refugee to permanent residents and to recheck their admissibility, you know, in the event that they do that. Under your reading of 1431, shouldn't 1159 say that you become an LPR? I'm actually not even sure because your argument is under 1431 you just skip over all of it, right? That once the mom becomes a citizen, the child also becomes a citizen. At no point does anyone need to be an LPR. Am I understanding your understanding? Yes, because he's a refugee. But again, unfortunately, the term lawful permanent resident or LPR I use it every day. Immigration officers use it every day. I'm sure, you know, Ms. Martin uses it every day. And it has all this gloss on it. But it's like not every, as the analogy I use in my reply brief, is that not every equine is a horse. You know? I mean, all horses are equines and you may be used to seeing horses all the time, but that doesn't mean that a mule or a donkey doesn't also qualify. And that's basically where we're coming from is that it's kind of misleading if we say LPR as if that has one meaning and there's only one way to get to it. What do you do with the fact that 1159A1 refers to aliens who have been admitted to the United States as refugees who have not acquired permanent resident status? If they're already LPRs because they're refugees, which is what I think you're arguing, I don't understand what the statute's talking about. Well, as I say, Section 209, I believe, has purposes other, but this case is unusual because we're looking at it through the acquired citizenship statute, Section 320, and it's an unusual way for the issue to come up. But as I say, in the normal course of things, if this petitioner had not been so young when he came here, such that his mother not only obtained permanent residence, but also naturalized long before he was 18, then we wouldn't be looking at all of this. And this statute would, as I say, it serves other purposes under other circumstances. Okay. Okay. Let's see. Okay, as I was just summarizing, the term lawful permanent resident or LPR has many meanings. The government never thought of it in this sense. The BIA never thought of it in this sense. Doesn't mean that under, you know, these terms, as they're defined in the Act, it doesn't mean this. It does, or we think so. Do you have a case from any jurisdiction, anywhere, where someone has thought of that in this sense, other than in the briefing in this case? No. As I said, it's an unusual case. I haven't found anything one way or the other on this. How unusual is it? I'm not sure I understand the unusual nature of it. So a young child comes to the United States under 15, I'm sorry, 1157, as a refugee, and then seeks an adjustment of status. That strikes me as not a particularly uncommon fact pattern. I mean, I don't, what do you mean it's unusual? Well, yeah, it's the combination of him coming here at one and a half, not adjusting with his mother because she understood what she was told to mean that he was automatically included in her application. Which, you know, as I explained in the brief, that's an understandable misunderstanding of the law because she was told he was included in her application. If you look at the application form, the I-485, it specifically asks, list all of your children who are not, you know, born in the U.S. So she did list him. So she thought that that would be enough. And had she done that, had she known to file a separate application, then without filing anything else, he would have become a citizen when she naturalized. Everybody, I mean, even the, I think the BIA agrees that had he adjusted with his mother as they believed he did, that he would be a citizen. So, does that answer your question, Your Honor? But it's not unusual, though, for people to have issues with law enforcement where they're not in status and then causing, where they're a young person who's never lived in the country. No, it's the combination of his young age when he came in, the mistake that, whosever fault it was, it wasn't his because he was, you know, a young minor at the time, and then the subsequent criminal history that makes it removable. Can I ask you about your second petition? I'm sorry? Can I ask you about the second petition? Sure. I don't want to interrupt if you want to do more on the first one. Are you challenging the Board's waiver decision? Yes. So the thing you're asking us to decide is whether the waiver was correctly denied? Yes, on legal grounds. But you're not challenging the motion to reconsider. You want us to reach the underlying question of whether the waiver was correctly decided. Well, yes, we are asking the Court to review the denial of the motion to reconsider because  Suppose we do that and we get to the waiver question. What do you want us to do? Well, I think the decision of the Board has to be vacated. And we have jurisdiction to do that? And return to them with appropriate instructions. How do we have jurisdiction to do that? Well, the Court does not have jurisdiction to review discretionary determinations. However, this Court decided in Gene V. Gonzalez that questions, you know, the question of whether the standards applied are ultra-virus, that's a legal question that the Court can review. Now, there's also, there's not a lot of case law dealing with 209C waivers. Okay, so what exactly do you want us to do? I understand what kind of on the merits, which you want us to say that he's, that he was already a citizen, but what legal relief do you seek from us on all the claims that you have? Well, if the Court agrees that he's a citizen, then he, you know, and by the way, he's already been removed to Romania. So if the Court decides he's a citizen, he should be able to go to the Embassy there and apply for a passport. But we don't just generally opine, you're not asking for a declaratory judgment here. What, what specific relief are you seeking from this Court? Well, that would, if he's a citizen, then the removal proceeding should be terminated. I mean, just outright terminated.  Now, on the— What if he's not a citizen? I'm sorry? What if he's not a citizen? Then we get to the 209C waiver, and as I said, I understand the Court doesn't have jurisdiction to review a purely discretionary determination. There's not a lot of case law on this, but the 11th Circuit held that it is an error of law for the Board not to consider a factor of hardship that was specifically presented. And that's the, uh, McGeer-Marwill decision. What is the difference between saying that the Board made a discretionary mistake and the Board failed to consider a piece of evidence in making its discretionary decision? Well, I think one is an error of law. How are they not both error—on your theory of an error of law? Section 209C says that it can be waived for humanitarian purposes, to assure family unity, or issues other in the—otherwise in the public interest. Now, in this case, neither the judge nor the Board ever thought about humanitarian, even though that was repeatedly emphasized, that you're sending this guy who never spoke Romanian in his life back to a country, you know, where he doesn't speak the language. Basically, he's there and his family is having to support him. Failure to consider one of those factors. And then they also misapply, and before I get any further, I need to mention that last Friday, November the 1st, and as I said, there's not a whole lot of cases on 209C, administrative or judicial, but last Friday, the Board decided a case dealing with 209C. It's called Matter of C-A-S-D. Did you provide this to opposing counsel before the hearing today, if you're about to cite a case to us that was decided last Friday? I did not. To be honest with you, Your Honor, I only read it yesterday. I know, but you've been sitting in this courtroom together this afternoon while we had another case. Haven't you been? Am I wrong on that? Yes. I don't want to be unfair. I'm wrong? No. You were both sitting in the courtroom and you didn't say, I have a brand new case I'm going to bring up. I don't want to surprise you, opposing counsel. Okay. Well, you can submit your case in the 28J, and you can respond to the 28J, and your time has expired, but you have saved time for rebuttal. Thank you. Thank you. Good afternoon, Your Honors, and may it please the Court, my name is Ashley Martin, and I represent the United States Attorney General in this matter. Your Honors, an individual may derive citizenship only in strict compliance with the acts of Congress. Here, Mr. Nastase contends that he derives citizenship pursuant to AUSC Section 1431. That statutory section clearly requires lawful permanent residence while under the age of 18. Mr. Nastase has failed to show that he acquired lawful permanent residence prior to the age of 18, and for that reason, the Court should deny his first petition for review. The Court should dismiss the second petition for review because the Court lacks jurisdiction to review the agency's discretionary denial of the waiver application. Should we, but we should, so dismissal is the right route for the second one, not denying because it's, even though the issue has to do with the ultra-vire, do you think it's dismissal? Your Honor, I do because the second petition for review is really asking the Court to review the manner in which the agency weighed the discretionary factors in this case, and the Court lacks jurisdiction to do that. So we should just pierce through to what it's actually asking for? I'm just trying to, this is a puzzling situation of whether it would be if you were to win, and I'm not foreshadowing whether it's dismiss or deny. This is a little bit differently phrased in the way that it's pled. Well, Your Honor, the second petition for review does also challenge the Board's denial of Mr. Nastase's motion to reconsider, and generally the Court can review the denial of a motion to reconsider for abuse of discretion, so I think that the Court could do one of two things. You know, either deny that second petition in part because there was no abuse of discretion with regards to recognizing that the motion to reconsider merely repeated arguments already raised before the Board, and the Court should otherwise dismiss that second petition in part because it does lack jurisdiction to review the agency's discretionary weighing. Okay, so we would, under your theory, and this is what I was asking opposing counsel, exactly what relief is sought. Under your theory, you would like us to deny the petition, the first petition, because it's not demonstrated that he was lawfully admitted for permanent residence, correct? I mean, that he's not an LPR. Correct. He was never an LPR, and therefore did not derive citizenship. And the second one, we would deny in part because the BIA didn't abuse his discretion on the motion to reconsideration, for motion for reconsideration, and dismiss in part on the whatever remains. Correct, Your Honor. Okay. I don't understand how you deny in part, and here's why. If the question is, did the Board abuse its discretion, and in order to figure out the answer, I look at this memorandum, the brief that Mr. Nastassi filed in front of the Board. It's all about, you should have granted my waiver. Grant my waiver, grant my waiver, for all the reasons that counsel passionately explained to us. He has an argument about the family separation and the factors that weren't considered, and please consider these and grant my waiver. And so in determining whether there was an abuse of discretion, we then, we are necessarily trotting into the 1152 discretion bar on review of discretionary decisions. So I don't even understand how you review abuse of discretion when the discretion itself is not a jurisdictionally cognizable issue in the Court of Appeals. So why wouldn't it just be straight up dismiss the second petition in full under 1152? Well, Your Honor raises a good point. I mean, in this case, the motion to reconsider really was a vehicle to simply ask the agency to take a look at the discretionary factors again. And the argument on review is really that, well, the Board didn't give enough weight to the positive factors and gave too much weight to the negative. And so I think for that reason, the Court could correctly simply dismiss the second petition for review. So it, again, do you not have a case of which we've done in the past in this situation? Your Honor, my understanding in the past is that this court, when presented with a motion to reopen or a motion to reconsider, that raises a substantive issue over which the court lacks jurisdiction. The court in the past has simply dismissed. Dismissed is what our normal treatment is? And so did not deny in part and dismiss in part, but dismissed? Yeah. Or is our treatment inconsistent? And you're allowed to say that. Your Honor, my recollection of this court's case law is that the court lacks jurisdiction regardless of the vehicle that was used to raise the argument. Did you want to address any of these? We've discussed what relief you're seeking or that you think should be denied. Do you want to address anything further or do you want to stand on your briefs? Your Honor, I would like to point out for the court that Mr. Nastase's argument that refugee status is essentially tantamount to LPR status should be rejected for several reasons. As this court noted, there is a provision at 8 U.S.C. Section 1159 providing for the permanent resident status. There would be no purpose to Section 1159 if refugees were essentially already in lawful permanent resident status. Furthermore, there are features about refugee status that materially distinguish it from LPR status. When you look at the statute at 8 U.S.C. Section 1159 and its implementing regulation at 8 U.S.C. Section 1159, it's clear that Congress contemplated that refugees would be admitted conditionally for one year and that at the end of that year they would then be considered for lawful permanent resident status. Essentially, the inspection for lawful permanent resident status is deferred by one year when someone is admitted to the United States as a refugee. It's clear there that these two statuses are not one and the same. And the board reiterated that in its decision in matter of decay. In fact, the board expressly referred to refugee status as being impermanent and conditional in nature. That's quite different from LPR status, which does not have a temporal end date. As opposing counsel indicated courts should start with the statute, is there anything to which we should apply Chevron deference to or do you wish us to avoid that issue altogether? Your Honor, the court does not need to reach the issue of whether it affords Chevron deference or Skidmore deference to the board's interpretation of citizenship statutes in this case because the language of the relevant statute here is so clear. It uses the term lawful admission for permanent residence. That is a term of art that is defined in the INA and as the court decided in its Martinez decision, the term lawful admission for permanent residence refers to one of two things. It's either admission at the border and permanent resident status or it's a subsequent post-entry adjustment to lawful permanent resident status. Neither of those situations occurred here. Mr. Nastassi was admitted at the border as a refugee, not as an LPR, and he did later apply to become a lawful permanent resident when he was 20 years old, but that application was denied first by USCIS and then second by the immigration judge when he renewed that application. Does it matter at all that he's been removed to Romania at this time? Does that affect any of this at all? No, Your Honor. It does not affect the government's arguments. You know, I would agree with Petitioner's Counsel that if this court were to conclude that Mr. Nastassi is a derivative citizen of the United States, that would then be a consulate. So the fact that he's been removed, it does not moot the petition for review, nor does it affect the government's arguments in this case. Thank you. If Your Honors have no further questions, I can rest on the brief. Thank you. Thank you. I'd just like to address the court's jurisdictional question. In Gene B. Gonzales, this court held that it can still review questions of law in connection with a 209C waiver. Now, if the Board creates, well, actually it wasn't the Board, it was the Attorney General. The Attorney General in matter of Gene, about 15 years ago or so, created a heightened standard for the exercise of discretion in the case of someone convicted of a violent and dangerous crime. In that case, Ms. Gene, who was of fairly recent arrival, had been convicted of manslaughter killing a 19-month-old child that was left in her care, and she had been sentenced to like six years in prison. The Attorney General held that in a case involving those violent and dangerous crimes, that a heightened standard should be applied and that the waiver should only be granted in the presence of exceptional and extremely unusual circumstances. Now, in this case, there is no violent or dangerous crime. So, the whole heightened scenario that was set forth in matter of Gene shouldn't even be applied here. And yet, here we have someone with no violent or dangerous crimes and the court is completely refusing to consider, I mean the Board was completely refusing to consider the humanitarian issues that were presented and stressed. I'll address this in the 28J letter, but the recent decision came out on Friday, basically said that hardship to the applicant themselves is a legitimate concern in determining whether someone has the exceptional and extremely unusual, you know, hardships. They found that even with that, he didn't need it, but it is a factor. And it's a factor that was never considered here. And so, to me, that's an error of law. But I understand it's completely a question of how the court wants to characterize it. I'll submit it at that point. Thank you. Thank you. We have your argument. We appreciate it. Thanks.